Good morning, may it please the court, Thomas Otake on behalf of Appellant Larry Lee. This case is an appeal, as you know, from the district court's denial of a motion to suppress evidence based on the search of Mr. Lee's vehicle. It's well settled, as the court is aware, under the 4th and 14th Amendment, that any search without a search warrant is per se unreasonable, and therefore it's a matter of whether or not the government has shown that there are exceptions that apply. In this case, two in particular, whether or not consent was given voluntarily, and then secondly, whether or not the automobile exception applies. As you know from our brief, it is our position that the alleged consent given in this case was not given voluntarily when you look at all the factors and the totality of circumstances, and then from there we also believe the automobile exception does not apply. As it relates to consent, any analysis related to whether consent was voluntarily starts, it doesn't end with, but it starts with the factors that this court has delineated and affirmed in cases like United States v. Jones. When you look at the record and you look at those factors, it's clear that at least two of those Jones factors undisputedly apply in our favor. Mr. Lee clearly was in custody at the time of the consent, and secondly, Miranda warnings had not been given. So, counsel, what's our standard of review when we're reviewing the district court's determination of whether or not the consent was voluntary? It's clearly erroneous. Right, so we don't get to decide the facts in the first instance. So would you tell us why the district court clearly erred in finding that the consent was voluntary? When you look at cases like United States v. Mourning, it talks about how every encounter has its own facts and its own dynamics, and that you have to look at the totality of the circumstances. And what you have here in the record, even taking what Judge Seabright found to be the applicable facts, you have law enforcement, both local and federal, who are aware that a federal agent's gun had been stolen from a vehicle about a month prior. They found the people who actually took the gun, which was not Mr. Lee, and those people told them that they sold the gun to Mr. Lee. So you have law enforcement now, a month later on January 25, 2011, going to Mr. Lee's residence thinking that he has a stolen firearm. So they show up with their police presence. They tell Mr. Lee at the first instance that he's under arrest for outstanding traffic warrants. He's therefore in custody from that point moving forward. You have then him not being given his Miranda warnings. You have the federal agents showing up. You have the federal agents questioning him in his apartment. You have them searching his apartment, finding nothing. They go outside. The resident manager says, depending on who you believe, and Judge Seabright obviously believed the officers, the resident manager says, hey, there's a van in the back over there that's used for storage. They bring Mr. Lee out. He's in custody. He has not been given his Miranda warnings. He at that point is told by one of the officers, hey, the word on the street is that you have this gun, and it's in that totality of circumstances that they ask him, can we search this van? And he, according to the police, says yes. So our position is when you look at the fact that he was in custody, you look at the police presence, you look at the fact that Miranda wasn't given, you look at the way the police acted and the things that were told to Mr. Lee, our position is that it was clearly erroneous. He didn't just say yes. He really started offering up a defense at that point. And he says if he finds something there, it wasn't me, it was Agnew? Correct. And that suggests to me he's not responding because he doesn't understand or his free will has been overwhelmed. It sounds more like, hey, I understand how this works. I'm going to start deflecting responsibility. And so, yes, if you find something, it's still not me because it was this other guy who put it there. And, you know, I understand that there's cases that support that line of thought. I think an alternative, or I would submit an alternative thought is, you know, it also shows a level of him being scared at the moment, him being panicked at the moment and saying these things given the police presence, given what they're telling him. You know, he's there in custody. We know word on the street is you have this gun. Here's your van. The resident manager said that's your van. You know, can we search it? And he says these things that you bring up about Mr. Agnew. So I would submit that that alternatively demonstrates that he was at that moment in a position of panic, in a position of duress, and that's why he said those things. But I acknowledge there are cases that suggest exculpatory statements being made in a situation like that to support what Your Honor just mentioned. So, Counselor, if you had to choose one case from among the Ninth Circuit cases that you think most strongly supports your argument that the consent was not voluntary, what would that case be? Well, when you look at... If you had to choose one case. If I had to choose one, I mean, the case that is mentioned in the briefing, the De La Renta case, I understand that may on its face appear to be similar. In fact, and in that case, it was upheld that the consent was voluntary. However, when you look at the circumstances and what was said to Mr. Lee in terms of, look, the word on the street is you have the gun. We want to search this van. I would submit that the Ninth Circuit cases, I would submit our position is that they differ in terms of the facts of this case. So you think that the Ninth Circuit precedent would have to be distinguished in order for you to prevail? Distinguish in terms of the factual differences between this case and the other cases. And you want us to start with the Jones factors, but then apply to the facts of this case in a way somewhat different than in... I think that that's a fair statement. And, you know, the one thing I would mention, and it goes back to what Your Honor mentioned at the beginning, you know, two of the factors clearly apply. There were two others that our position should also apply, but for Judge Seabright's credibility determinations. And although that is a clearly erroneous standard when you're looking at the factual determinations, I would argue, and I know that district courts are given wide discretion in how they judge credibility, but one thing that is important to keep in mind is one of the reasons Judge Seabright lists for finding Kainoa Haas and Mr. Sablan, the resident manager, not credible is he says, I don't find them credible because it seems, and this is not verbatim, but what he was saying was it seems as though their testimony was formulated in a way to help the defendant. And so I would say, you know, that really puts defendants and appellants, you know, in a jam. If anytime somebody's going to say something that helps their case, the judge is going to find them not credible because what they're saying helps their case. And so I would argue that that's something that this court should look at in terms of, was his determination that Kainoa Haas and Mr. Sablan, his finding that they were not credible, was that clearly erroneous because he's basing that off of the fact that they said things that helped the defendant and therefore he thought, well, they must not be credible. And so because when you look at what they're saying, then you do add into the factor, into the mix, this issue of guns being drawn. Kainoa Haas testified guns were drawn, and that's also a Jones factor. And then you have to also, I think, question the other factor related to whether or not as they went to the van, was Mr. Lee informed that he could refuse consent? And you have Agent Pa saying, on the one hand, I did tell him he could refuse consent of the van, but then you have Officer Chong, who was standing right there, on the other hand, who testified he didn't hear that being said. So at least two of the Jones factors clearly apply. I would submit that the two others arguably apply as well. And I know that the Jones factors aren't the end-all, be-all, and I know they're not an exhaustive list, but they're obviously important enough that the court chose to delineate those five factors. And you have two that clearly apply and two that I submit should also apply, and that's our position. And that's consent. An automobile exception, I don't know if the court has questions about that. It appears not. It appears not. Thank you, counsel. Thank you. We'll hear from the government. May it please the Court, Darren Ching on behalf of the United States. Your Honors, the district court was in the best position to carefully assess the credibility of the witnesses, the four witnesses that did testify. And in weighing the credibility of the witnesses, the district court, in a very thoughtful and detailed order, specifically noted, quote, after carefully observing the demeanor of the witnesses, after evaluating their candor and manner of testifying, the court finds that Chong was credible. His demeanor was earnest and straightforward, and he appeared at all times to answer questions based on his truthful recall of events. The same simply cannot be said of Haas and Sablan, both of whom appeared to the court to be testifying in a manner that they believed would be most beneficial to the defendant. The court, therefore, does not credit Haas' testimony concerning his initial contact with HPD or Sablan's testimony concerning the initial encounter with Chong. What about Mr. Otake's criticism of that passage, that, well, it's not proper to discredit a witness because the witness's testimony is favorable to the defendant? I don't think that was what the court was doing. I think it was a fact that not that it was the witnesses that were called for defense helped the defense's position, but given the totality of the evidence, that's what the court based its credibility finding on, not specifically because it helped the defense. Well, that's what he said, isn't it, something like that? Well, he said... In the passage you read? It was most beneficial to the defendant. Well, of course, you know, obviously the defendant's not going to call witnesses that are going to be adverse to him. Right. Just like the government's not going to call witnesses that are adverse to the government's case, right? But given the totality of the circumstances, given the totality of the evidence provided, the court had to weigh the versions, and in doing so, it found the government's position to be more credible. Did you, were you the attorney who was assigned to this case for trial? I was not, Your Honor. More importantly, not only did Judge Shebright find Agent Pa, excuse me, Officer Chong to be credible, but he specifically found Agent Pa to be credible, and that's important because Agent Pa was the witness that testified that he informed Mr. Lee that he had the right to refuse consent. Now... Officer Chong couldn't confirm that. Well, defense argues that he never heard that. That's not completely true. That's not what the record bears out. The witness, Officer Chong, was never specifically asked that question. So it wasn't a situation where he was asked the question and he said, no, I never heard it. He was just never asked about it. So it's not a situation where there's actually conflicting testimony. But it's true. I mean, and I phrased it, couldn't confirm it. There was nothing from Officer Chong that said, yes, I heard Agent Pa say you have a right to refuse consent or something like that. That's correct, Your Honor. And it's not a huge leap to infer that if Officer Chong could have corroborated, he probably would have been asked to corroborate. So I hear your point. The defense is trying to surmise something that's from the absence. But it is true that Officer Chong did not confirm that consent was explained in that fashion. That's correct. At the suppression, a better follow-up question by the government could have been, did you hear Officer Pa tell Mr. Lee he had the right to refuse consent? That was never asked. But by the same token, that wasn't asked by defense either. It wasn't followed up on cross-examination. Did you hear him say that? So it cuts both ways, Your Honor. The defense probably prefers silence to an answer he doesn't like. Right. My point being that there's no conflict in testimony. The fact that Officer Chong didn't hear that, or not that he necessarily didn't hear it, the fact that he didn't testify about hearing it is two different things. But there is a vacuum in the testimony. Yes. After weighing the credibility of the witnesses, Judge Shebright then went on to say, after considering the totality of circumstances and concluding that Chong and Pa provided credible testimony, the court finds that the defendant's consent to search the Volkswagen van was intelligent and voluntary, and the defendant's will had not been overborne and his capacity for self-determination critically impaired. Right. So based on the court's viewing of all of the evidence, the record supports these findings. There's nothing in the record after you get over the court's credibly findings that supports the defense argument that, in fact, Mr. Lee's consent was involuntary. What was the district court's rationale for declining to credit the testimony of the apartment manager that the police approached him rather than him approaching the police? The only thing in the record, as pointed out by Judge Tsushima, was there was a mention that it seemed that that testimony was most beneficial to the defendant. But I think what the court can also look at is, given the testimony, the credible testimony of Officer Chong, he made a determination that, in weighing Officer Chong's testimony versus Mr. Sablan's testimony, I am finding credible. Right, but what was the basis for that finding of credibility? The apartment manager was not involved in the crime at all. He was not suspected of being involved in the crime. He didn't have a personal relationship with the defendant. So what was the basis for the district court deciding that the apartment manager's testimony should not be credited if it wasn't the fact that it was beneficial to the defendant? What other basis is there in the record for making that determination? Credible testimony of Officer Chong that was in direct conflict with the testimony of the resident manager. That's the basis for the judge's ruling. In other words, he had to choose one or the other. He did. And after careful consideration of the testimony, that's what Judge Seabright did. He made a credibility finding. With that being said, it's important to realize that Judge Seabright was able to view the testimony of the witness live. He was able to see their demeanor, how they responded to questions, how they answered questions, their truthfulness. And, in fact, Judge Seabright does talk about how credible he found Officer Chong in his ordering. And he specifically states that, based on the way Officer Chong testified, that he found him to be most credible. Did he say anything about demeanor of any of the testifying witnesses? He did mention that he found Officer Chong to be – his demeanor was earnest and straightforward, and he appeared at all times to answer questions based on his truthful recollection of events. So I think what the judges here are getting to is it allows Judge Seabright being in the best position to weigh credibility, to make that determination. And, Judge Rawlings, you're right. You mentioned at this point in time you don't get to decide the facts. Judge Seabright decided the facts. And in this particular case, he decided the facts based on his credibility findings of Officer Chong and Officer Pa. And, also, he discredited the testimony of Mr. Haas, the defendant's son. And that, in part, while not explicitly stated in the order, I would argue to the court, has to do with Mr. Haas' bias in this case. It was elicited through government counsel that, yes, he loves his father. He knew his father was facing a 15-year mandatory minimum, and his father wasn't in good health and that he could die in prison. So what better reason for a son to shade his testimony than to prevent his father from dying in prison? Well, that's why I asked the question about the apartment manager, because those same biases didn't exist vis-à-vis the apartment manager. Through the testimony, there was no evidence of any particular bias that Mr. Sablon had. But, nonetheless, the court still needed to make a credibility determination given that Mr. Sablon was saying one thing and Officer Chong was saying something completely different. And, indeed, there's potential argument for bias here on the part of the agent and the police officer. I mean, this whole episode was driven by a weapon that was stolen from an agent. So the motivation to recapture that weapon and get to the bottom of that particular case is probably stronger than the average episode. It's not hard to see a scenario whereby the agents are motivated and might cross the line but don't want to testify they crossed the line. So you can certainly fault the defendant's son for having a motivation, but you, by the same token, fault the agent for having his own motivation. You could very well, but that gets back to Judge Seabright's ability to determine credibility and seeing the witnesses live and be able to hear how they answer questions in a DMIR is so important here. One final point with regard to a point made by defense with regard to Miranda warnings. Judge Clifton, you did mention that it was a story Mr. Lee was trying to make up which to you would indicate that his consent wasn't involuntary. And I would agree, it's probative of voluntariness. The fact that he made up an exculpatory statement shows that he wasn't panicked. He was thinking ahead. He was trying to figure out how to get out of this. And I submit that that doesn't show duress or coerciveness. All right. Thank you, counsel. We'll hear rebuttal. Thank you. Just very briefly, like I said in the beginning, I understand the discretion that is given to the district court judge in making credibility determinations. And I understand the standard that we're faced with. That being said, you know, the district court is not given complete power to just judge someone's credibility based on an unreasonable position. And in his order, when you look at, when you talk about demeanor, he talks about the demeanor of Officer Chong being earnest and straightforward, which, you know, you would expect from many law enforcement officers testifying that would answer questions in a straightforward manner. But when he talks about the credibility of Haas and Sablan, he doesn't mention anything about their demeanor. All he mentions is the same simply cannot be said of Haas and Sablan, both of whom appear to the court to be testifying in a manner that they believe would be most beneficial to a defendant. And so I ask the court to keep that in mind. A defendant, if any time a witness says something favorable to him, that person is not credible because it looks like he's trying to help the guy, then he'd never be able to put on any witnesses. So we do believe that Judge Seabright, in relying on that rationale, erred. And that's our position as it relates to credibility. And when you factor that in, and what Your Honor was talking about as to the circumstances of why the officers were there, then it makes what Kainala Haas said all the more credible. And when you factor that in, then that's two more of the Jones factors, or at least one more, the gun drawn, that would weigh in our favor. And then when you consider Officer Chong not hearing Agent Pa tell my client, you have the right not to let us search your van, that would be a fourth Jones factor. Before we get to the Jones factor analysis, your case really depends on the credibility of your witnesses, right? In other words, if we agree with Judge Seabright that his credibility ruling was not clearly erroneous, then your whole Jones factor analysis crumbles, doesn't it? It makes it much more difficult, but we still have undisputedly the two factors and the other circumstances that weigh in our favor. The lack of Miranda in the custody would still be there, and the fact that he was told, the word on the street is, you have the gun. So yes, it makes it much more difficult, but some factors would still weigh in our favor, even if you go with Judge Seabright's findings. Thank you. Thank you. Thank you to both counsel. The case is argued and submitted for decision by the court.
judges: Tashima, Rawlinson, Clifton